CLERK'S OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED for

AUG 01 2007

JOHN F. CORCORAN, CLERK
BY: HMcDonald
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| DAMIAN ANTONIO MURPHY,<br>    Plaintiff, | Civil Action No. 7:07CV00273 |
| v. | **MEMORANDUM OPINION** |
| AGENT BRIAN SNEDECKER, et al.,<br>    Defendants. | By: Hon. Jackson L. Kiser<br>Senior United States District Judge |

Plaintiff Damian Antonio Murphy ("Murphy"), a federal inmate proceeding pro se, brings this civil rights Complaint pursuant to 42 U.S.C. § 1983, with jurisdiction vested under 28 U.S.C. § 1343.[1] Murphy is currently housed at a federal correctional center in Atlanta, Georgia. In his Complaint, Murphy alleges that prison officials violated his constitutional rights in several respects during his incarceration at Roanoke City Jail.[2] He also raises several racial discrimination claims.

---

[1] Murphy's second Amended Complaint states for the first time his intent to bring his suit under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671-2680, with jurisdiction vested under 28 U.S.C. § 1331. To proceed in the district court with a claim under the FTCA, a claimant must first exhaust the available administrative procedures. 28 U.S.C. § 2675. The exhaustion requirement is jurisdictional and may not be waived. Plyler v. United States, 900 F.2d 41, 42 (4th Cir. 1990). Murphy has failed to demonstrate exhaustion by providing a copy of the requisite Standard Form 95 ("SF 95"). Accordingly, I will only consider Murphy's relevant claims in the context of a § 1983 action.

[2] Murphy also alleges a long list of claims stemming from his criminal trial, arguing that the traffic stop that led to his conviction for conspiracy to distribute cocaine and possession of counterfeit currency violated applicable search and seizure laws. He alleges that the officers' alleged failure to test the confiscated drugs at the scene amounts to an abuse of process as the substance seized was only baking soda. He claims that he was falsely arrested and imprisoned because of these actions. He claims that the evidence seized from the car and also the police cruiser tapes viewed at trial were tampered with by the prosecution and that this constitutes malicious prosecution and obstruction of justice. Murphy takes specific issue with the indictment claiming that the indictment was insufficient due to the fact that no drug weight was indicated in the indictment. Murphy also claims prosecutorial misconduct, alleging that the prosecutor forced Murphy's fiance and also his co-defendant to testify falsely at trial by offering them a plea agreement in return. He claims that all of the agents that testified at his trial committed perjury under oath and maintains several other trial errors pertaining to evidence and jury instructions. Such claims are properly redressed, if at all, by way of a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2255, rather than in this action under 42 U.S.C. § 1983. Preiser v. Rodriguez, 411 U.S. 475 (1973) (actions "attacking the validity of the fact or length of confinement" are not cognizable under § 1983); see also Todd v. Baskerville, 712 F.2d 70, 71-72 (4th Cir. 1983). Regardless, addressing the merits of these claims is clearly premature at this stage as Murphy's conviction in criminal action 1:06CR00062 (W.D. Va. June 12, 2007), is currently pending on appeal. Accordingly, I will dismiss these claims without prejudice.

Murphy seeks monetary damages and injunctive relief. Upon review of his lengthy Complaint, I conclude that Murphy has not properly exhausted his administrative remedies as to several of his claims and that he has not stated a claim upon which relief can be granted as to rest of the issues. Accordingly, I will dismiss the Complaint without prejudice, pursuant to 42 U.S.C. § 1997e(a)[3], in part, and 28 U.S.C. § 1915A(b)(1)[4], in part.

### I. Exhaustion

In 1996, Congress enacted the Prison Litigation Reform Act ("PLRA") in an attempt to reduce the number of frivolous civil rights cases filed by prisoners. The PLRA requires a prisoner to exhaust all available administrative remedies before bringing a claim under § 1983. 42 U.S.C. § 1997e(a) (2000); Woodford v. Ngo, 548 U.S. ___, 126 S. Ct. 2378, 2382 (2006) (stating that "[e]xhaustion is no longer left to the discretion of the district court, but is mandatory"); Cutter v. Wilkinson, 544 U.S. 709, 723 n. 12 (2005). Furthermore, prisoners must not just initiate timely grievances, but must also make a timely appeal of any denial of relief through all levels of available administrative review. Woodford, 548 U.S. ___, 126 S. Ct. at 2387 (holding that the PLRA requires "proper exhaustion" of institutional administrative remedies before filing any federal suit challenging prison conditions); Porter v. Nussle, 534 U.S. 516, 532 (2002) (stating that the PLRA applies to "all

---

Murphy further claims that he was provided ineffective assistance of counsel by both of his appointed counsel. Defense attorneys do not act "under color of" state law and are, therefore, not amenable to suit under color of state law, whether privately retained, Deas v. Potts, 547 F.2d 800 (4th Cir. 1976), appointed by the state, Hall v. Quillen, 631 F.2d 1154, 1155-56 (4th Cir. 1980), or employed as public defenders, Polk County v. Dodson, 454 U.S. 312, 325 (1981). Accordingly, as neither counsel can be considered a "person" subject to suit under §1983, these claims will also be dismissed without prejudice.

[3] This section requires that: "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."

[4] Section 1915A(b)(1) provides that the court shall dismiss a complaint as soon as practicable if the court determines that it is frivolous, malicious, or fails to state a claim upon which relief may be granted.

2

inmate suits, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong"); Booth v. Churner, 532 U.S. 731, 739 (2001) (finding that the PLRA requires administrative exhaustion prior to the filing of a federal civil rights suit even if the form of relief the inmate seeks is not available through exhaustion of administrative remedies). Moreover, a court may sua sponte dismiss a complaint under 42 U.S.C. § 1997e(a) if the plaintiff first has a chance to respond on the exhaustion issue or if it is clear from the face of complaint that he did not exhaust before filing the action. Anderson v. XYZ Correctional Health Services, 407 F.3d 674, 682-83 (4th Cir. 2005).

On June 14, 2007, Murphy was ordered to submit documentation demonstrating that he exhausted his administrative remedies or that the remedies are not currently available to him. Murphy alleges that he filed grievances as to his excessive force claim but that "they blew me off with red tape" and that he "never heard anything." (Am. Compl. 3.; Second Am. Compl. 4.) Murphy does not allege that he filed any grievances as to any other claim besides the excessive force claim. In his second Amended Complaint, Murphy maintains that he would have more information concerning the grievances that he allegedly filed if he had not been incarcerated at several different locations. Murphy does not allege that he requested copies of the grievances that he allegedly filed. Nor does he allege that he timely appealed any denied grievances through the highest available level of administrative review. Accordingly, Murphy has not exhausted his institution's administrative remedies with respect to any of his claims as required by 42 U.S.C. § 1997e(a).[5]

---

[5] Regardless, I note that Murphy's excessive force claims lack merit. Murphy alleges the following sequence of events in support of his claim that officers in the Roanoke City Jail ("the jail") used excessive force in subduing him. On November 27, 2006, Murphy arrived at the jail from a hearing at the federal courthouse. Murphy alleges that, during a search at check-in, Deputy Amos reached into Murphy's underwear. Murphy claims that he "moved" because he did not like Amos to feel on his "private parts." (Compl. 4.) Amos then "grabbed" Murphy and another officer grabbed Murphy's head "pulling his neck out of joint" and "damaging [his] neck, head, and back." (Compl. 4; Second Am.

3

## II. Analysis of Claims

To state a cause of action under § 1983, a plaintiff must allege facts indicating that he has been deprived of rights guaranteed by the Constitution or laws of the United States and that this deprivation resulted from conduct committed by a person acting under color of state law. West v. Atkins, 487 U.S. 42, 49-50 (1988). Section 1983 does not confer substantive rights; rather, it

---

Compl. 2.) Then, "the whole first shift in [the] Roanoke Jail started assaulting" Murphy. (Compl. 4.) A female officer jumped on Murphy's back and two other male officers held his arms, "almost breaking them." (Compl. 4.) An unspecified "Sgt." also punched Murphy in the "ribs and kidneys." (Second Am. Compl. 2.) Murphy also claims that he was subjected to a "cavity search" after this incident. (Second Am. Compl. 2.) In his original Complaint, Murphy claims that he was refused medical attention but later alleges in his Second Amended Complaint that he did not ask for medical attention for fear of a retaliatory lawsuit. Murphy alleges that he suffered a "series of migraine headaches" due to this incident. (Second Am. Compl. 2.)

  The unnecessary and wanton infliction of pain by a prison official through the use of excessive force upon an inmate has been clearly established as a violation of the Eighth Amendment's prohibition on cruel and unusual punishment for a number of years. See Hudson v. McMillian, 503 U.S. 1, 5 (1992); Whitley v. Albers, 475 U.S. 312, 319 (1986). To establish an Eighth Amendment excessive force claim against a prison official, an inmate must satisfy a two-prong standard comprised of both an objective inquiry (whether the harm plaintiff suffered was sufficiently serious enough to amount to a constitutional violation) and a subjective inquiry (whether the defendant acted with a sufficiently culpable state of mind). Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996). Not every malevolent touch by a prison guard amounts to a deprivation of constitutional rights. See Hudson, 503 U.S. at 9 (citing Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir. 1973)).

  To meet the objective component in an excessive force case, an inmate must show that he suffered more than de minimis pain or injury. See Williams, 77 F.3d at 761 (citing Hudson, 503 U.S. at 9-10); see also Taylor v. McDuffie, 155 F.3d 479, 483 (4th Cir. 1998) (holding that "absent the most extraordinary circumstances, a plaintiff cannot prevail on an Eighth Amendment excessive force claim if his injury is de minimis"). Without determining the subjective requirement, I conclude that any injury Murphy alleges to have suffered following the November 27, 2006 confrontation is de minimis and does not amount to a constitutional violation. See Germain v. Ruzicka, No. 99-6979, 2000 WL 139255 (4th Cir. Feb. 08, 2000) (affirming the district court's determination that a severe two-week headache, allegedly instigated by mace spray, was a de minimis injury); Fair v. Rowe, No. 9;05-1025-MBS, 2006 WL 1391541 (D.S.C. May 18, 2006) (finding that "injury" of alleged headache was clearly was de minimis).

  Finally, in order to state a constitutionally significant deprivation of medical care, a plaintiff must allege facts sufficient to demonstrate that the defendants knew of and deliberately disregarded a serious medical need. Estelle v. Gamble, 429 U.S. 97, 104 (1976); Farmer v. Brennan, 511 U.S. 825, 828 (1994); Rish v. Johnson, 131 F.2d 1092, 1096 (4th Cir. 1997). A medical need serious enough to give rise to a constitutional claim involves a condition that places the inmate at a substantial risk of serious harm, usually loss of life or permanent disability, or a condition for which lack of treatment perpetuates severe pain. See Farmer, 511 U.S. at 832-35; Sosebee v. Murphy, 797 F.2d 179, 182-83 (4th Cir. 1986); Loe v. Armistead, 582 F.2d 1291, 1296-97 (4th Cir. 1978). Applying these principles to Murphy's allegation that he was denied medical care, I find that he has failed to state a claim under the Eighth Amendment. Allegations of a few migraine headaches are not sufficiently serious to constitute a serious medical need. See Webb v. McKnight, No. 7:06CV00734, 2006 WL 3761382, at *2 (W.D. Va. Dec. 20, 2006) (finding that plaintiff's complaints of indigestion, constipation, headaches, vomiting, and emotional distress did not constitute a serious medical need).

4

provides a method by which an individual can vindicate substantive rights conferred elsewhere. Albright v. Oliver, 510 U.S. 266, 271 (1994).

### A. Racial Discrimination Claims

Murphy alleges that he has been subjected to racial profiling, prejudice, and racism because he is an African-American man involved in a relationship with a female of Hispanic and Caucasian descent. He claims that "all of [the] agents, deputies, and law enforcement" that were involved in his case were "racist." (Compl. 4.) He specifically points to officer D.W. Pruett's alleged statement, "You are going to jail, stupid Nigger!," as support for his allegations. (Compl. 4.) Murphy further claims that was found guilty at trial because he is "an African-American with no money to hire a good attorney to fight for justice" and that he was "forced to represent himself in trial because of his race." (Compl. 13.) He also alleges that he was discriminated against because the jury that determined his guilt consisted of only Caucasian members.

Allegations of racial discrimination are actionable under § 1983, Henry v. Van Cleve, 469 F.2d 687 (5th Cir. 1972), but merely conclusory allegations of discrimination are insufficient to state a claim. Chapman v. Reynolds, 378 F. Supp. 1137 (W.D. Va. 1974). Although Murphy makes several accusations, none of them find support in the facts at hand. His conclusory allegations are not sufficient to support a constitutional claim of race discrimination tainting every aspect of his arrest and prosecution. First, Murphy seems to ignore the fact that he was appointed counsel on two separate occasions. Also, while it is conclusive that a black defendant is denied equal protection when he is placed on trial before a jury from which members of his race have been purposely excluded, a defendant has no right to a jury composed in whole or in part of persons of his own race. Batson v. Kentucky, 476 U.S. 79, 85 (1986). Murphy makes no allegation that jury members were

5

excluded based solely on their race and there is certainly no evidence of that type of exclusion at Murphy's trial. Furthermore, Officer Pruett's statement, even if made, is insufficient to support a claim of racial discrimination. Murphy has not produced any evidence that his race played any part in arrest or the manner of his arrest.[6] See Thomas v. Kincaid, No. 03-941-AM, 2004 WL 3321472 (E.D. Va. June 30, 2004) (finding that Caucasian Trooper's statement, "Come here you piece of shit," to African-American defendant was insufficient to support a claim of racial discrimination); Felton v. Chupik, No. Civ.A. 00-CV-1889, 2002 WL 32344335 (E.D. Va. Aug. 21, 2002) (finding that the comment, "I think you broke that nigger's neck," was insufficient to support a claim of racial discrimination against a police officer). In sum, Murphy has produced no evidence that he was treated differently on account of his race; therefore, his claims fail. Accordingly, I will dismiss these claims, pursuant to § 1915A(b)(1).

## III.

Based on the foregoing, I find that Murphy has not presented any claims that constitute a violation of his constitutional rights. Therefore, I dismiss his Complaint without prejudice pursuant to 42 U.S.C. § 1997e(a), in part, and 28 U.S.C. § 1915A(b)(1), in part.

---

[6] The most plaintiff asserts is that he was assailed with a racial epithet. However, verbal abuse and harassment, without more, does not state a constitutional claim. See Cullins v. Cundy, 603 F.2d 825 (10th Cir. 1979) (holding that the Sheriff's actions in laughing at and threatening to hang the plaintiff were not sufficient to show the deprivation of a constitutional right). The constitution does not "protect against all intrusions on one's peace of mind." Pittsley v. Warish, 927 F.2d 3, 7 (1st Cir. 1991). Verbal harassment or idle threats to an inmate, even to an extent that causes an inmate fear or emotional anxiety, does not constitute an invasion of any identified liberty interest. Emmons v. McLaughlin, 874 F.2d 351, 354 (6th Cir. 1989) (verbal threats causing fear for plaintiff's life not an infringement of a constitutional right); Martin v. Sargent, 780 F.2d 1334, 1338 (8th Cir. 1985) (calling an inmate an obscene name did not violate constitutional rights); Lamar v. Steele, 698 F.2d 1286 (5th Cir. 1983) ("Threats alone are not enough. A section 1983 claim only accrues when the threats or threatening conduct result in a constitutional deprivation."); Ellingburg v. Lucas, 518 F.2d 1196, 1197 (8th Cir. 1975) (defamation does not implicate any constitutionally protected right); Keyes v. City of Albany, 594 F. Supp. 1147 (N.D.N.Y. 1984) ("[T]he use of vile and abusive language [including racial epithets], no matter how abhorrent or reprehensible, cannot form the basis for a 1983 claim."). The law is clear that mere "threatening language and gestures of [a] penal officer do not, even if true, constitute constitutional violations." Fisher v. Woodson, 373 F. Supp. 970, 973 (E.D. Va. 1973).

Plaintiff is advised that he may appeal this decision pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure by filing a notice of appeal with this court within 30 days of the date of entry of this Order, or within such extended period as the court may grant pursuant to Rule 4(a)(5).

The Clerk is directed to send copies of this Memorandum Opinion and accompanying Order to Plaintiff and to counsel of record for the Defendants, if known.

ENTER: This 1st day of ~~July~~ August, 2007

*/s/ Jackson L. Kiser*
Senior United States District Judge